337 So.2d 253 (1976)
Linda ARADO and Willard Arado
v.
The CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA et al.
No. 7292.
Court of Appeal of Louisiana, Fourth Circuit.
August 23, 1976.
Writ Refused November 16, 1976.
*254 Marvin C. Grodsky, New Orleans, for plaintiffs-appellants.
*255 Henry Leon Sarpy, Porteous, Toledano, Hainkel & Johnson, New Orleans, for Central Nat. Ins. Co. of Omaha.
Frank A. Taylor, Orlando, Fla., for Marvin Vann and Joy Vann.
E. Kelleher Simon, Murphy & Simon, New Orleans, for Allstate Ins. Co.
Before REDMANN, BOUTALL and SCHOTT, JJ.
REDMANN, Judge.
A father and daughter, residents of Missouri, appeal from a judgment which denied his claim for medical expenses and awarded her $200,000 against a now-major tortfeasor (and, to its "unstacked" $10,000 limits, the tortfeasor's insurer) but denied recovery against the tortfeasor's father, a resident of Florida, and against plaintiff's own uninsured motorist coverage insurer. We reverse the denial of the medical expense claim against the tortfeasor and otherwise affirm.
At issue are: the Missouri father's entitlement to recover for tort-caused medical expenses he paid for his then comatose 20year-old but once-married daughter; the Florida father's liability for his 17-year-old daughter's tort; "stacking" of defendant insurer's liability coverages under a threecar policy; liability of both plaintiff's own and defendants' insurers under uninsured motorist coverages; and quantum.

Plaintiff Father's Entitlement
Plaintiff father is a resident of Missouri. We need not decide whether plaintiff daughter remained an unemancipated minor under Missouri law (see Nelson v. Browning, Mo.1965, 391 S.W.2d 881) despite her marriage (terminated by her husband's death). Her comatose state and need made her father legally liable for her support even if a major, Fower v. Fower Estate, Mo.1970, 448 S.W.2d 585; compare La.C.C. 229. The father is therefore legally subrogated, C.C. 2161(3), to the claim of the daughter. Alternatively, by consenting to have him sue for those expenses in the same action in which she herself sued, the daughter conventionally subrogated him.

Defendant Father's Liability
Defendant father is a resident of Florida. It is not shown that he has ever been in Louisiana personally or through his 17-year-old runaway daughter as an agent. Thus the Louisiana law of paternal responsibility, C.C. 2318, would be of doubtful application for lack of territorial jurisdiction over the father. (But see Watkins v. Cupit, La.App.1961, 130 So.2d 720; Note, 36 Tulane L.Rev. 339). It is in any case doubtful that La.C.C. 2318 would make this father liable, since this Florida runaway had many weeks earlier quit residing with the father. She had often left home for extended periods without permission since age 14 and, despite two juvenile court proceedings, had long escaped her father's control. Under Florida law, an "emancipation" might therefore have occurred so that the father might not even be liable for her support; see Ison v. Florida Sanitorium and Ben. Assn., Fla.App.1974, 302 So.2d 200.
The father could nevertheless be liable under Florida law if he had signed an application by his under-18 daughter for a Florida driver's license, Fla.Stat. § 322.09(3), or if he were the owner-lender of the vehicle she drove injuriously, Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629. We cannot, however, reverse the trial judge's refusal to infer either of these circumstances from the evidence in the record. Neither driver's license (much less application) nor car title is in evidence. On ownership, the testimony is that the father loaned the daughter the few hundred dollars to buy the used car to be titled in her name (though he added it to his insurance policy) and her mother assisted her in filling out the registration papers. On the driver's license, the daughter testified she had had one (which may be doubted; she said she threw it away because it became blood-soaked in the accident while in another passenger's possession); but she did not testify it was a Florida license, and *256 her frequent periods away from home might have enabled her to get one elsewhere. There was no testimony relative to any application for license, and it appears possible that even a Florida license could have been obtained on the signature of some other person if the daughter showed she did not live with her parents.
We therefore affirm the holding that defendant father is not liable.

"Stacking" of Liability Coverage
The tortfeasor was insured under a single policy which charged a separately stated premium for Florida's statutorily-required $10,000 liability coverage for each of three automobiles. Plaintiffs compare this coverage to statutorily-required uninsured motorist coverage, and argue that, as with the latter, the statutorily-required liability coverage should be "stacked" so that the tortfeasor's insurer should be liable for the sum of the limits for each of the three cars. But liability coverage is unlike uninsured motorist coverage. The law requires that uninsured motorist coverage provide the full statutory coverage to an insured irrespective of the number of cars owned or insured, so that, unless coverage is stacked, the insured would get nothing for the additional premium charged for additional cars. Liability coverage, on the contrary, needs not and does not protect against liability from using an owned but uninsured second car, and therefore the insured does get additional insurance when he pays the additional premium charged for additional cars. The reasoning supporting stacking of uninsured motorist coverage is therefore inapplicable to liability coverage.

Uninsured Motorist
Defendant daughter's uninsured motorist coverage protects, besides the named insured's family, only persons "occupying an insured automobile," i. e., an automobile insured under the policy in question: and it is only because plaintiff daughter was occupying an insured automobile that she became an insured for purposes of uninsured motorist coverage. But that coverage expressly excludes coverage of injury from an "insured automobile." Thus under the terms of the policy, plaintiff daughter is an insured for uninsured motorist coverage, but defendant daughter is not an uninsured motorist for whom her own uninsured motorist insurer would be liable. (The terms of statutes such as Louisiana's R.S. 22:1406, subd. D do not prevent such a result because they do not oblige policies to afford uninsured motorist coverage to anyone other than "persons insured" under the liability coverage, i. e., persons insured against their own liabilitywhich would not include plaintiff daughter. We further note that if defendant daughter's policy were in the form of three policies, one for each car, the uninsured motorist coverage of the second and third cars' policies would not purport to protect a stranger riding in the first car. That the insurance for the three cars is in one policy rather than three should not affect the result.) Accordingly we conclude that defendant daughter's insurer is not liable under its uninsured motorist coverage.
Plaintiff father's insurer insured only one car and had uninsured motorist limits of $10,000. There is no suggestion of any other uninsured motorist coverage with which that $10,000 could be stacked so as to exceed the $10,000 liability limits of defendant daughter's insurance. Therefore, even if plaintiff daughter might qualify as an insured under her father's policy (despite doubt whether she resided with him; see Waltz v. Cameron Mut. Ins. Co., Mo.App.1975, 526 S.W.2d 340), defendant daughter, insured for the same limits that plaintiff father's uninsured motorist coverage provided, was not an uninsured motorist under Missouri law despite damages' exceeding liability coverage; Brake v. MFA Mut. Ins. Co., Mo.App.1975, 525 S.W.2d 109. (Louisiana's contrary R.S. 22:1406, subd. D(2)(b), enacted subsequent to our accident, does not apply to plaintiff father's Missouri insurance contract in any case.)
*257 Nor is defendant daughter's insurer liable on its uninsured motorist coverage because of the "miss-and-run" truck she testified contributed to her running off the street into a tree. An eye witness testified there was no other vehicle and, despite his vision's being blocked towards his left rear by the bus around which defendant sped, his testimony (further supported by the investigating police officer's testimony of scuff and skid marks from only one vehicle) amply justified the trial judge's rejection of defendant daughter's testimony of a missand-run truck.
A final argument on insurancethat defendants' insurer refused to settle within the $10,000 policy limitsis not supported by any evidence.

Quantum
Past medical costs of $20,384 due plaintiff father are fairly proven. Future medical is not proven (and would be due to the daughter).
The daughter remembers nothing from five months before the accident until regaining consciousness four months after the accident. She had to relearn the alphabet, spelling, talking and mathematics. She wears a plate in one leg; one leg is shorter than the other. She must use a cane to walk and special shoes for balance. She cannot break a fall. She has several scars. Medication to control some infections allows proliferation of others. She will never return to normalcy, although there is hope for continuing improvement. But she is not as injured as the permanently institutionalized plaintiff in Trahan v. Girard Plumbing & Spr. Co., La.App. 1974, 299 So.2d 835, which she cites. The $200,000 award to the daughter is not below the limits of the trial judge's discretion, C.C. 1934(3).

Decree
The judgment is reversed in its dismissal of Willard Arado's demand and there is judgment in his favor against Joy Vann for $20,384 with interest from judicial demand and all costs; and the judgment is otherwise affirmed.