| | | |
|---|---|---|
| **BERKLEY ASSURANCE COMPANY** | * | **NO. 2020-CA-0354** |
| | * | |
| **VERSUS** | | **COURT OF APPEAL** |
| | * | |
| **MELISSA WILLIS, AS PARENT/GUARDIAN OF MACY LEE WILLIS, ET AL.** | * | **FOURTH CIRCUIT** |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

<u>**CONSOLIDATED WITH:**</u>

**BERKLEY ASSURANCE COMPANY**

**VERSUS**

**MELISSA WILLIS, AS PARENT/GUARDIAN OF MACY LEE WILLIS, ET AL.**

<u>**CONSOLIDATED WITH:**</u>

**NO. 2020-CA-0355**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-08008, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Terri F. Love, Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge Paula A. Brown)

**LOBRANO,J., CONCURS IN PART, DISSENTS, IN PART, AND ASSIGNS REASONS**

Sidney Wallis Degan, III
Richard C. Badeaux
Travis Louis Bourgeois
DEGAN BLANCHARD & NASH
400 Poydras Street
Suite 2600
New Orleans, LA 70130


        COUNSEL FOR PLAINTIFF/APPELLEE

John Martin Jefcoat
Kimberly Souriyakhamphong
GALLOWAY JEFCOAT, LLP
P.O. BOX 61550
Lafayette, LA 70596-1550

COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED; REMANDED**
**September 29, 2021**

PAB
TFL
RLB
RML

This is an insurance coverage dispute within a concursus proceeding. Defendants/Appellants, Melissa Willis, on behalf of Macy Lee Willis ("Ms. Willis") and Maria B. Alvey ("Ms. Alvey") (collectively "Defendants"), and Intervenor/Appellant, Sarah Viviano ("Intervenor"), appeal the district court's March 12, 2020 judgment, which granted the summary judgment in favor of Plaintiff/Appellee, Berkley Assurance Co. ("Berkley") and denied the motion for partial summary judgment filed by Ms. Willis and Ms. Alvey. For the reasons that follow, we reverse the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of a tragic automobile accident. On March 2, 2017, Mikela Hall, an uninsured motorist, struck and killed Macy Lee Alvey, III (the "Decedent"). At the time of the accident, the Decedent was allegedly in the course and scope of his employment with Rony's Towing & Recovery, LLC d/b/a Rony's Automotive ("Rony's Towing" or the "Insured"). Berkley issued Rony's Trucking a commercial auto insurance policy with liability limits of one million

1

($1,000,000.00) per accident. The policy contained an uninsured/underinsured motorist bodily injury coverage form" (the "UM Form"), selecting uninsured/underinsured motorist ("UM") coverage for bodily injury in the amount of thirty thousand dollars ($30,000.00) for each accident. The UM Form was electronically signed by Rony Polizzi, Sr. and dated November 23, 2016.

On August 17, 2017, Berkley filed a petition for concursus, declaratory judgment, and injunctive relief (the "Petition"), impleading Ms. Willis (Decedent's alleged minor child, through his mother) and Ms. Alvey (Decedent's mother), who had raised claims to the Berkley policy proceeds. In the Petition Berkley alleged, among other things, that: (1) that the full sum of the policy proceeds was $30,000.00, which remained available; (2) the Decedent may have additional children who could come forward to assert claims to the policy proceeds; and (3) it had been unable to determine the proper claimants to the policy proceeds because of competing and unknown claims.

On August 22, 2017, the district court issued an order, wherein it granted leave for Berkley to deposit the $30,000.00 policy limit, plus accrued interest, into the district court registry. The district court enjoined all persons from instituting further lawsuits regarding the accident. The district court further ordered that Berkley have no additional liability beyond the $30,000.00 policy limit, plus interest, such that, after deposit, Berkley be fully discharged from liability in connection with the accident. The district court ordered that the impleaded persons

and defendants be cited to appear and assert their claims contradictorily against all other defendants.

Defendants were served with the Petition on September 19, 2017 and September 20, 2017, respectively. On October 16, 2017, Defendants each filed answers to the Petition, in which neither admitted to the amount of policy limits.

On January 4, 2018, Berkley deposited thirty thousand four hundred eighty-two and 05/100 dollars ($30,482.05) into the registry.

On February 28, 2018, Defendants jointly filed a peremptory exception of no cause of action for concursus and, in the alternative, a motion for action of nullity of order(s) issued, seeking dismissal of the concursus or, alternatively, nullity of the August 22, 2017 order. Defendants argued in pertinent part that: (1) the amount of insurance coverage was disputed; (2) the concursus was not a viable means by which to adjudicate damages in a wrongful death claim; (3) the UM Form was invalid on the basis that it did not contain the insurance company name, logo, or group name; and (4) the full amount of insurance coverage was the liability limits of one million dollars ($1,000,000.00). Defendants contended that the August 22, 2017 order should be nullified, and a contradictory hearing should have been held.

On August 10, 2018, a hearing on the exception and motion was held. The district court took the matter under advisement. On November 19, 2018, the district court rendered judgment, denying the exception of no cause of action and motion for action of nullity. Defendants sought supervisory review, which was

3

denied in *Berkley Assurance Co. v. Willis*, 19-0020 (La. App. 4 Cir. 2/25/19)(unpubl.). Defendants, likewise, sought review by the Louisiana Supreme Court which was denied. *Berkley Assurance Co. v. Willis*, 19-0511 (La. 5/28/19), 274 So.3d 560. Notably, Justice Hughes, wrote he would grant the writ, explaining, "I do not believe an uncertain sum can be the basis for concursus. In any event, the concursus defendants can proceed by reconventional demand to ascertain the amount at issue." *Id.*, 19-0511, p. 1, 274 So.3d at 561.

While the concursus proceeding was pending, on February 11, 2019, Ms. Willis filed a separate wrongful death action in a different division of the district court against Berkley as UM carrier. Berkley countered by filing exceptions of *res judicata* and *lis pendens*, which the district court denied. Berkley sought supervisory review which this Court denied. *Willis v. Berkley Assurance Co.*, 19-0628 (La. App. 4 Cir. 8/14/19)( unpubl.), *writ denied*, 19-01465 (La. 11/12/19), 282 So.3d 210.[1]

On March 4, 2019, another claimant, Decedent's alleged daughter, Sarah Viviano ("Intervenor"), filed a motion for leave to file a petition of intervention in the concursus proceeding, which Ms. Willis opposed. A contradictory hearing was held on May 10, 2019, but none of the other parties appeared. On June 26, 2019, the district court granted Intervenor leave to file her petition of intervention. Intervenor did not file an answer to the concursus petition.

---

[1] During oral argument, counsel for Berkley mentioned the exceptions were reurged and granted by the trial court. However, the appellate record does not contain this judgment.

4

On October 15, 2019, Berkley filed a motion for summary judgment in the concursus proceeding, seeking a final judgment "declaring that the total amount of available UM/UIM coverage under the Policy is $30,000.00. . . ." In support of its motion, Berkley introduced certified copies of its policy and the UM Form accompanied by the affidavit of senior claims adjuster Amy Roth.[2]

On December 12, 2019, Defendants filed a cross motion for partial summary judgment, arguing that the UM Form was invalid, thus, UM coverage was $1,000,000.00 based on the liability limits. Specifically, Defendants contended that the UM Form lacked the insurance company name, logo, and/or group name, in violation of the Louisiana Commissioner of Insurance (the "Commissioner") Bulletin 08-02. Defendants further argued that Berkley failed to prove the UM Form was executed by the named insured and/or its legal representative, as the UM Form bore the electronic signature of "Rony Polizzi, Sr.," whose name did not appear in the policy. Defendants annexed to their cross motion, in pertinent part, an affidavit by a representative of the Louisiana Secretary of State's Office, attesting to the original limited liability company ("LLC") filing and registration of Rony's Towing. According to these filings, the LLC's registered agent were "Rony Jo Polizzi" and the two LLC managers are Rony Jo Polizzi and Angel Dubose. Defendants argued that the LLC filings did not establish with undisputed

---

[2] In the affidavit, Ms. Roth attested that the Berkley policy was the only policy in effect on the date of the accident and that the UM Form was a "true and accurate copy of the UMBI Form executed by Rony's Towing & Recovery d/b/a Rony's Towing."

facts that Rony Polizzi, Sr. and Rony Jo Polizzi were the same person or that Rony Polizzi, Sr. was the Insured's legal representative.

On January 8, 2020, Defendants filed an opposition to Berkley's motion for summary judgment, wherein they urged the same arguments made in their cross motion for summary judgment and introduced the same exhibits. Also on January 8, 2020, Intervenor filed an opposition to Berkley's motion for summary judgment, likewise contesting the validity of the UM Form.

Berkley filed an opposition to Defendants' summary judgment motion on January 9, 2020, attaching the unsigned affidavit of Rony Jo Polizzi, Sr., stating that:

- He is a member and authorized agent of the Insured;
- In that role of member and authorized agent, he procured the Berkley policy;
- In procuring the policy, he executed the UM Form on the Insured's behalf;
- He electronically signed and printed his name on the UM Form;
- The signature on the UM Form of "Rony Polizzi, Sr." is his signature;
- The printed name on the Form of "Rony Polizzi, Sr." is accurate;
- The initials of "RPS" next to his selection of $30,000.00 of UM coverage are his initials; and
- In executing the UM Form, he intended to select lower UM coverage limits of $30,000.00 on behalf of the Insured.

A hearing on both motions for summary judgment was held on January 24, 2020. During the hearing, Berkley orally moved to supplement its opposition to Defendants' summary judgment motion with the executed affidavit of Rony Jo Polizzi, Sr. Defendants objected. After taking the matter under advisement, on March 12, 2020, the district court rendered judgment, which granted Berkley's oral

6

motion to supplement with the original signed affidavit of Rony Jo Polizzi, Sr., granted Berkley's summary judgment and denied Defendants' summary judgment.

Consolidated appeals filed by Defendants and Intervenor (collectively "Appellants"), respectively, followed.

## DISCUSSION

Appellants, in two separate appeals that were consolidated, raise several assigned errors that we summarize as follows:

(1) The district court erred in denying Ms. Willis and Ms. Alvey's cross motion for summary judgment, and in finding that Rony's Towing & Recovery properly rejected UM coverage under Policy No. VUMA0131590; and

(2) The district court erred in granting Berkley's Motion for Summary Judgment, "declaring that the total amount of available UM/UIM coverage under the Policy is $30,000.00. . . ."

*APPLICABLE LAW ON SUMMARY JUDGMENT*

In *Szewczyk v. Party Planners West Inc.*, 18-0898, p. 6 (La. App. 4 Cir. 5/29/19), 274 So.3d 57, 61 (citations omitted), this Court explained that "[a]ppellate courts review the grant or denial of a motion for summary judgment *de novo*, employing the same criteria that govern the district court's determination of whether summary judgment is appropriate." In *Wooley v. Lucksinger*, 09-0571, p. 49 (La. 4/1/11), 61 So.3d 507, 554 (footnote omitted), the Supreme Court explained the *de novo* review:

> The Louisiana Constitution provides that the appellate jurisdiction of a court of appeal in a civil matter extends to both law and facts. La. Const. 1974, art. 5, § 10(B). Questions of law are reviewed *de novo,* with the judgment rendered "on the record, without deference to the legal conclusions of the tribunals below." *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 06-0582 p. 9 (La. 11/29/06), 943 So.2d 1037, 1045; *citing Louisiana Municipal Association v. State,* 2004-0227 p. 35 (La.1/19/05), 893 So.2d 809, 836. This constitutional provision has also "been interpreted as giving an appellate court the power to decide factual issues *de novo.*" *Ferrell*

7

*v. Fireman's Fund Ins. Co.,* 1994-1252 p. 3 (La. 2/20/95), 650 So.2d 742, 745. However, while a court of appeal may have the constitutional authority to make a *de novo* review of a factual finding, the exercise of this power has been limited by the jurisprudential rule that a trial court's factual findings will not be upset unless they are manifestly erroneous or clearly wrong. *Brewer v. J.B. Hunt Transport, Inc.,* 2009-1408 p. 9 (La. 3/16/10), 35 So.3d 230, 237.

Louisiana Code of Civil Procedure Article 966(A)(3) provides that "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." Generally, the burden of proof for a motion for summary judgment rests on the mover. La. C.C.P. art. 966(D)(1) provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

With these precepts in mind, we turn to the issues before this Court.

*EXCEPTION OF NO CAUSE OF ACTION*

This Court, on its own motion, raised the issue of whether the concursus proceeding was the proper procedural vehicle to resolve the amount of liability owed by the insurer.[3] *See* La. C.C.P. art. 927 (which provides that failure to disclose a cause of action may be noticed by an appellate court on its own motion). A peremptory exception of no cause of action "questions whether the law extends a

---

[3] On appeal, this Court ordered the parties to submit supplemental briefs addressing whether Berkley had a cause of action in concursus for an uncertain and/or disputed sum and whether a dispute as to the limits of insurance coverage must be litigated in a separate ordinary proceeding.

remedy against the defendant to anyone under the factual allegations of the petition." *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612, p. 7 (La. 3/17/06), 929 So.2d 1211, 1217 (citing *Industrial Cos., Inc. v. Durbin*, 02-665, p. 6 (La. 1/28/03), 837 So.2d 1207, 1213). "The exception is triable on the face of the petition and, to determine the issues raised by the exception, each well-pleaded fact in the petition must be accepted as true." *Id.*

"A concursus proceeding is one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding." La. C.C.P. art. 4651. "Persons having competing or conflicting claims may be impleaded in a concursus proceeding even though the person against whom the claims are asserted denies liability in whole or in part to any or all of the claimants . . . ." La. C.C.P. art. 4652. Article 4652 of the Louisiana Code of Civil Procedure, which also imposes limitations on use of the concursus procedure, provides, in part, that "[n]o person claiming damages for wrongful death or for physical injuries may be impleaded in a concursus proceeding, except by a casualty insurer which admits liability for the full amount of the insurance coverage, and has deposited this sum into the registry of the court."

First, on the face of the petition Berkley raised a valid cause of action in concursus. Second, we found no reported cases directly on point addressing whether a dispute as to the limits of insurance coverage could be addressed in the concursus or must be litigated in a separate ordinary proceeding. Notwithstanding, in *State Farm Mutual Automobile Insurance Co. v. Ray*, 161 So.2d 148 (La. App. 3d Cir. 1964), the appellate court did not prohibit the liability insurer from availing

9

itself of the provisions of C.C.P. Art. 4651 *et seq.*, when it admitted liability, and deposited the proceeds, plus interest, asserting that was the extent of its limit under one policy, even though the insurer sought a declaratory judgment as to: (1) the amount deposited constituted its entire liability under the policy, and (2) any rights the plaintiffs had as to proceeds of another policy. As discussed *supra*, Berkley filed the Petition, which impleaded certain claimants to its policy proceeds, admitted liability on the full amount of its UM coverage, $30,000.00, based on the face of the UM form, and deposited that amount into the registry of the court. Following the filing of Berkley's Petition, a dispute arose as to whether the deposited amount was the full amount of the insurance coverage. Nevertheless, Berkley did not seek dismissal of the concursus; instead, Berkley filed a motion for summary judgment, requesting a declaratory judgment that the limits of liability of the UM policy was $30,000.00. In response, Defendants filed a cross motion for partial summary judgment, asserting that the UM policy limits should be $1,000,000.00, not $30,000.00, because the UM waiver form was invalid. In addition, as noted *supra*, Defendants previously sought dismissal of the concursus via exceptions on the same grounds but were denied relief. Thus, considering the particular procedural circumstances in the case *sub judice* and no statutory or jurisprudential prohibition under Louisiana law, we conclude there is no procedural bar for Berkley to obtain declaratory relief on an insurance coverage issue and to resolve the dispute in the amount of coverage under the UM policy in the same concursus proceeding.

*SUMMARY JUDGMENTS*

At issue before the district court was Berkley's motion for summary judgment, seeking a final judgment "declaring that the total amount of available

10

UM/UIM coverage under the Policy is $30,000.00. . . ." Whereas, Defendants moved for partial summary judgment on the grounds that the UM waiver form was invalid because: (1) it lacked the insurer's name, group name, and/or logo; and (2) the lack of admissible, summary judgment evidence demonstrating that Rony Polizzi, Sr. was the Insured's legal representative with lawful capacity to sign the UM form.

The UM coverage statute is to be liberally construed, and the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. *Vitelaro v. Zana*, 15-1365, p. 3 (La. App. 4 Cir. 6/22/16), 195 So.3d 1259, 1261 (citing *Duncan v. U.S.A.A. Ins. Co.*, 06-0363, pp. 4-5 (La. 11/29/06), 950 So.2d 544, 547). Under the UM coverage statute, "rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." La. R.S. 22:1295(1)(a)(ii). La. R.S. 22:1295(1)(a)(ii), continues, in pertinent part:

> The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.

Pursuant to the authority granted under La. R.S. 22:1295(1)(a)(ii), the Commissioner promulgated Bulletin 08-02 together with a revised UM form, effective on or after January 1, 2010, which provides, in relevant part:

**Important Form Changes**

\* \* \*

11

- **Policy number and other policy identification information** - The revised UM form includes two boxes on the lower right hand corner of the form.

  > -The upper box contains an area that the insurer <u>may</u> use for policy information purposes (e.g. policy number, binder number, application number, etc.). This box does not need to be filled in for the form to be properly completed.

  > -The lower box <u>must</u> contain one of the following: the individual company name, the group name, or the insurer's logo. (Emphasis added).

It is undisputed that the UM Form at issue in this case is demarcated as the form issued per the Commissioner's Bulletin 08-02. The contents of the UM Form contains the following:

- Electronically signed initials "RPS" next to the coverage chosen;
- Amount of $30,000.00 per accident/occurrence filled in;
- Printed name of "Rony Polizzi, Sr.";
- Electronically signed name of "Rony Polizzi, Sr.";
- Date of "11/23/2016"; and
- The lower left hand corner of the form provides two boxes. One box states "<Optional Information for Policy Identification Purposes Only>," The second box states "<Individual Company Name; Group Name and/or Logo>." Neither of these boxes were filled out.

*Individual Company Name; Group Name and/or Logo*

Defendants assert that the UM form lacks the required insurer's name, group name, or logo, rendering the form invalid. There is no dispute the UM form lacks this requirement. In turn, Berkley argues that the insurer's name, group name, and/or logo is not a requirement for a valid form, relying on *Duncan v. U.S.A.A. Ins. Co*, 06-0363 (La. 11/29/06), 950 So.2d 544, which will be discussed *infra*. Defendants respond that since *Duncan* the UM form prescribed by the Commissioner has changed.

12

At the time *Duncan* was decided, Bulletin 98-01 provided, in part:

> The prescribed UM Form is required by law to be used with all automobile insurance policies delivered or issued for delivery in Louisiana. FOR IDENTIFICATION PURPOSES, THE COMPANY NAME MUST BE PLACED AT THE LOWER LEFT-HAND CORNER AND THE POLICY NUMBER AT THE LOWER RIGHT-HAND CORNER OF THE FORM.

However, the prescribed UM form did not contain a place for the name of the insurance company, instead, it contained a blank for the policy number.

In *Duncan*, the issue before the Supreme Court was whether the UM statute required that the blank for the policy number contained on the insurance commissioner's UM form be filled in to effectuate a valid waiver of UM coverage. In *Duncan*, the court determined that an insured must comply with the following requirements, which corresponded to the tasks required by the Commissioner's Bulletin 98-01, except for the company name, in order to effect a valid waiver of UM coverage:

> (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4) then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

*Id.*, 06-363, pp. 11-12, 950 So.2d at 551. The *Duncan* Court concluded that the failure of the insurer to fill in the policy number on the form prescribed by the Commissioner invalidated the UM waiver, and consequently, the UM coverage was equal to the liability limits of the policy. *Id.*, 06-363, p. 16, 950 So.2d at 554. Notably, the *Duncan* Court expressed, in pertinent part:

> [T]he legislature gave the commissioner of insurance the authority to create a form and stated that **"such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance."** [La. R.S.

13

22:1295(1)(a)(ii).] Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. By failing to include the policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage. (emphasis added).

*Id.,* 06-363, p. 14, 950 So.2d at 553.

Subsequently, in *Gingles v. Dardenne*, 08-2995 (La. 3/13/09), 4 So.3d 799, the Louisiana Supreme Court held that despite Bulletin 98-01 requiring that the insurer's name appear in the lower left corner of the UM selection form, the insurer's failure to put its name in that location did not invalidate the insured's waiver of UM, because the prescribed UM form designed by the Commissioner at that time, did not include a space for the insurer's name. The Supreme Court explained:

It is undisputed that the pertinent designated spaces on the form were filled out. Additionally, the form at issue in these proceedings satisfies all of the requirements of our opinion in *Duncan.* Under these circumstances, we find [the insurer] has established it is entitled to judgment as a matter of law.

*Id.,* 08-2995, p. 2, 4 So.3d at 800.

After *Duncan* and *Gingles*, pursuant to the authority granted under La. R.S. 22:1295(1)(a)(ii), the Commissioner promulgated Bulletin 08-02 together with a revised UM form to be effective on or after January 1, 2010. Bulletin 08-02 made the inclusion of policy information, e.g. policy number, binder number, application number, etc., optional, but the insurers name was mandatory. On the prescribed UM form, it expressly provided in the box, "<Optional Information for Policy Identification Purposes Only>."[4]  No such language was associated with the

_____

[4] This change was recognized in a *per curiam* by the Supreme Court in *Chicas v. Doe*, 15-0147, p. 1 (La. 5/1/15), 166 So.3d 238, 238:

requirement of the insurer's name. Instead, the prescribed UM form provided a box on the form that stated, "<Individual Company Name, Group Name, and/or Logo >."

In *Barras v. Cardinal Servs., LLC*, 19-530, pp. 15-16 (La. App. 3 Cir. 4/1/20), 297 So.3d 877, 888, *writ denied*, 20-00978 (La. 11/4/20), 303 So.3d 631, the appellate court recognized the UM form changed the required tasks since *Duncan*, *w*riting:

> [T]he commissioner's prescribed form now requires the insured to complete only five tasks in order to waive UM coverage: 1) initialing the selection or rejection of UMBI coverage; 2) if lower limits are selected, filling in the amount of coverage selected; 3) signing the name of the insured or legal representative; 4) printing the name of the insured or the legal representative; and 5) filling in the date the form was completed. The commissioner further requires that the first and second task be completed before the insured signs the UM waiver form. Additionally, it is no longer necessary to include the policy number, binder number, or application number on the form. However, the insurance company's name, group name, or logo must be placed in the lower box located in the bottom right-hand corner of the form.

Recently, the Third Circuit found that the failure to include the insurer's name on the UM form, which was in compliance with Bulletin 08-02, rendered it invalid. *Hart v. Mabou*, 21-0028, 2021 WL 2559252, at *6 (La App. 3 Cir. 6/23/21).

In addition*,* in *Dotson v. Price*, 399 F. Supp.3d 617, 622 (E.D. La. 2019), the plaintiff, injured in an automobile accident, sought a summary judgment on the ground the second or renewed automobile policy of his employer proved UM

---

The regulations of the Commissioner of Insurance, as contained in LDOI Bulletin 08-02, provide for a box on the UM selection form which the insurer may use for policy information purposes, such as policy number, binder number, application number, etc. The regulations further provide, "[t]his box does not need to be filled in for the form to be properly completed." In light of this provision, the absence of a blank box for the policy number does not create a question of fact concerning the form's validity.

coverage of $1,000,000.00, because the UM form did not comply with Louisiana law prescribing specific requirements for valid waivers of UM coverage. The federal district court agreed, and held that, following *Duncan,* the Commissioner promulgated a new bulletin and sample form, making optional the inclusion of a policy number on a UM waiver form, but making mandatory the inclusion of the insurer's name. The court explained that the current requirements, as modified by the updated form, were as follows:

(1) Initialing the selection or rejection of coverage chosen;
(2) if limits lower than the policy limits are chosen (available in options 2 and 4) then filling in the amount of coverage selected for each person and each accident;
(3) printing the name of the named insured or legal representative;
(4) signing the name of the named insured or legal representative;
(5) filling in the insurer's name, the group name, or the insurer's logo; and
(6) filling in the date.

*Id.* The federal district court concluded that UM waiver was ineffective under Louisiana law because the insured did not write in the lower amount of coverage it sought and the box designated to contain the insurer's name, group name, or insurer's logo was not filled in. *Id*., 399 F. Supp.3d at 622-23 (E.D. La. 2019)*; see also Guillory v. Commonwealth Ins. Co. of America,* 2021 WL 149474, at *2 (W.D. La 2021), (wherein the federal district court noted that the Commissioner issued a bulletin (Bulletin 08-02) and form making inclusion of the policy number optional but inclusion of insurer's name mandatory, and held that the UM waiver form, at issue, was invalid under Louisiana law because the box at the bottom right corner of the page designated to contain the insurer's name was left blank).

Clearly, these courts read Bulletin 08-02 as superseding *Gingles*, and we agree.

16

As a result, in the case *sub judice*, we conclude that the UM form was invalid, because it did not contain the insurer's name, group name, and/or logo on the UM form, as required by Louisiana law, which is consistent with La. R.S. 22:1295(1)(a)(ii) that "selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." "The failure of the insured to properly complete the UM waiver form invalidates the UM waiver and causes UM coverage to be read into the policy equal to the limits of bodily injury provided by the policy." *Barras*, 19-530, p. 11, 297 So.3d at 885. As a result, Berkley failed to prove it was entitled to summary judgment as a matter of law, and, in turn, Defendants were entitled to summary judgment as a matter of law.[5] Thus, the district court's judgment, granting Berkley's motion for summary judgment, declaring the Policy limit was $30,000.00 and denying Defendants' motion for partial summary judgment is reversed.

## CONCLUSION

Based on the above discussion, the district court's judgment, granting Berkley's motion for summary judgment and denying Defendants' motion for partial summary judgment are reversed. We remand for further proceedings consistent with this opinion.

**REVERSED; REMANDED**

---

[5] Defendants' remaining assigned errors and/or issue, challenging the requirements of the UM Form in this case are rendered moot